Alexandeb Del Gtobno, J.
The claimant, who is an attorney duly licensed to practice in the State of New York, sues the New York State Thruway Authority and the State of New York for alleged damages arising out of and as a result of a libel against the claimant, malicious abuse of process, and the false arrest and unlawful detention of the claimant by the defendants on the New York State Thruway at or near the Suifern exit.
Since the claimant has contended in this action that the Thruway Authority is actually a private corporation, and in addition thereto that the issuance of summonses by the State Troopers to him were in violation of the Thruway’s Bules and Begulations, it becomes important to set out as briefly as possible the necessary provisions of the Public Authorities Law, title 9 of article 2, which deal with the creation and maintenance of the New York State Thruway.
Section 352 reads in part as follows:
“ § 352. New York state thruway authority.
“ 1. A board to be known as ‘New York state thruway authority ’ is hereby created. Such board shall be a body corporate and politic constituting a public corporation. It *540 shall consist of three members appointed by the governor by and with the advice and consent of the senate. * * *
‘ ‘ 3. The power of such corporation shall be vested in and exercised by a majority of the members of the board then in office. Such board may delegate to one or more of its members or its officers, agents and employees such powers and duties as it may deem proper.
“ 4. Such board and its corporate existence shall continue so long as it shall have notes, bonds or other obligations outstanding (including notes, bonds or obligations hereafter issued or incurred) and until its existence shall be terminated by law. Upon the termination of the existence of the authority, all its rights and properties shall pass to and be vested in the state. ’ ’
Section 353 reads as follows :
“ § 353. Purposes of the authority and benefits therefrom.
“ The authority is created to and shall have power to construct, reconstruct, improve, maintain or operate a thruway system as provided by this title together with facilities for the public incidental thereto. It is hereby found and declared that such purposes are in all respects for the benefit of the people of the state of New York for the increase of their pleasure, convenience and welfare, for the improvement of their health, to facilitate transportation for their recreation and commerce and for the common defense; and the authority shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted by this title.”
Subdivision 5 of section 354 (Powers of the Authority) reads as follows: “5. To make by-laws for its organization and internal management and, subject to agreements with note-holders or bondholders, rules and regulations governing the use of the thruways and all other properties and facilities under its jurisdiction, which shall be filed with the department of state in the manner provided by section thirty-six of the executive law,*”.
The question as to whether or not the New York State Thruway Authority is a public corporation within the meaning of the act was passed upon affirmatively in Bird v. New York State Thruway Auth. (8 AD 2d 495).
In the instant case, the claimant entered the Thruway at the toll station at Spring Valley on his way north. When he reached Sloatsburg, some four miles north, he made a U turn at a crossover where there was a sign stating “No U Turn ” and where State Trooper Salvemini was stationed in his police car. The *541 trooper followed the claimant, stopped him and asked him why he made the U turn. The claimant stated that he had to relieve himself and since the nearest stop on his way north was 17 miles away he thought that it would be more prudent for him to turn back to Spring Valley.
The trooper issued a summons for the U-turn violation and confiscated claimant’s Thruway toll ticket in accordance with the rules of the Thruway. In place of it, he gave the claimant a note which claimant could present at the Spring Valley toll station. When the claimant reached the Spring Valley toll station he was told by the agent that for him to leave the toll station without presentation of a proper toll ticket he would have to pay $5, which is the maximum charge from the furthest point north, Buffalo to Spring Valley. The claimant refused to pay the same, but indicated willingness to pay the toll for the mileage that he travelled, if the agent would figure it out. He was told by the supervising agent who was called to the toll booth, that they had no authority to do so, that claimant would later have to take up this matter with the Authority itself. When the supervising agent again demanded that he pay the $5, the claimant again refused. Whereupon, State Trooper Kilfeather was called. He also advised the claimant that he would have to pay the $5 or he would have to issue a summons to him for evasion of tolls.
The claimant insisted that he was obligated to pay only the toll for the distance that he had travelled. He was told that these were the rules, and as a matter of fact, both the State Trooper and the toll supervisor made calls to their offices for guidance in the matter. Ultimately, however, the trooper issued the summons for evasion of tolls and the claimant was released and allowed to proceed on his way. ' The claimant states that Trooper Kilfeather told him that he would have to arrest him and perhaps even hold his car for bail, and incidental to that, that he was detained for about one and one-half hours. The trooper and the agent both stated that the claimant was neither told that he would be arrested nor was he ever at any time placed under arrest. They stated he was advised that he would receive a summons in accordance with the rules of the Authority.
I have • signed the findings herein, finding in favor of the defendants. I entertain.no doubt from my observation that the claimant, a member of the Bar and from all appearances a high-minded citizen, believed that it was just to pay for the distance he had travelled on the Thruway, and likewise felt, whether the rules of the Authority provided for the payment demanded of him or not, that such demand was unjust, especially under *542 the circumstances which had caused him to make the U turn. Under the stress of the facts disclosed he considered the demand for the payment of a toll from Buffalo to Spring Valley was harsh, whereas his own offer of payment was proper and correct. No doubt the claimant must have felt some humiliation, as well as hurt, at the manner in which he thought he was being treated. However, it is my opinion, that this hurt was subjective.
From the record, I am satisfied that both troopers, as well as the representatives of the Authority, spent perhaps too long a time with the claimant before arriving at a conclusion as to what their ultimate action would be which, I conclude, they did only out of deference for the person and his position in our society; and perhaps, also, with some temerity on their part as to whether they were completely right, in view of being faced by a lawyer of undoubted ability. The testimony indicates to me that no threats were made by any of these gentlemen towards the claimant. They were performing a duty which I suspect was no more pleasant for them than it was for the claimant himself. Their performance of duty was correct and within the bounds of propriety and the law.
I find no malice on the part of Trooper Salvemini in issuing a summons for making a U turn. This was a proper interpretation of the rules of the Thruway Authority, and no less proper was the confiscation by him of the toll ticket which now had no value in the southbound lanes of the Thruway. I hold that the issuance of the toll ticket is a license to the bearer to travel unmolested on the Thruway. Except for any incidental violations of the law which he may commit during his travel, that is a way of determining how far he has travelled and how much he owes when he leaves the Thruway. To that extent it is a contract, executory all the way until payment is made, when it becomes executed. However, when the claimant by making a U turn violates the terms of this license or executory contract, he no longer is entitled to the benefits thereof and thereby forfeits the right to hold the toll ticket, which is not usable in the opposite direction. In a sense he now becomes a trespasser upon the Thruway and very likely could be arrested under those circumstances.
The claimant questions the constitutionality of the rules made by the Authority as well as the validity of section 3 of article 2, of the Rules and Regulations of the Tkruway Authority which calls for the imposition of a charge from the most distant toll station to the station he is at. He claims this is an abuse of his rights as a citizen to be charged for and pay only for the distance that he had travelled. That, in my opinion, is not an abuse, but *543 is a proper method of controlling situations of a like nature. The rules provide for readjustment with the Director at a later date.
In an enterprise as large as the Thruway, it cannot be expected or required that a mere ticket taker can be permitted to compute distances and make a charge accordingly. This kind of a situation, if permitted, could give rise to many abuses, and therefore, such employees may only enforce the rules. Any variations therefrom must be and can be dealt with by the Executive Department of the Authority which can exercise discretion and judgment.
The other question raised, namely, that the State Troopers had no right upon the Thruway has no basis and reason. First of all, their power is State-wide. Secondly, the very statute creating the Authority gives them the right and imposes on them the duty to enforce not only the rules of the Thruway Authority but all the laws of the State of New York, including the Vehicle and Traffic Laws, as they would on any other State highway.
We cannot escape the fact that the Thruway is not anything but a State highway. It is the manner in which it was created and its necessary distinctive operation that have called for a “ special treatment ” for this particular highway, which is still part of the State of New York. It is a public highway. It is for the benefit and comfort of the People of the State of New York, and the statute makes it clear that all the laws of the State apply thereto in addition to the special rules and regulations which the Authority has the power to promulgate. Trooper Kilfeather was properly called to the Spring Valley toll station and he had the power to issue the summons which set forth the violation in the very words of the statute. Whether the violation should read “ evasion of tolls ” or ‘ ‘ refuse to pay ” is merely a matter of semantics. In the sense in which this summons was issued, namely, as a traffic offense, whether one word was used or the other word, in the minds of any reasonable person there would be presented no difference in law or in the appraisal of the character of the claimant.
This claimant was in no way hurt, except for whatever hurt he may have felt by the issuance of the summonses, which were both properly issued. For this reason, I have passed upon the findings of the claimant and have signed all the findings of the State dismissing the claim therein.